## CORCORAN v. HINKEL et al.

## No. 15,325; December 13, 1893.

### 34 Pac. 1031.

**Mortgage—Waiver of Redemption.**—Defendant in a Mortgage Foreclosure Suit Made a Compromise agreement with plaintiff, whereby the latter agreed to accept a part of the amount claimed if paid within sixteen months, the purpose of the parties being stated to be a sale of the mortgaged premises after a reasonable time to extinguish the debt as fixed by the contract and to save expenses of foreclosure sale. The contract provided that the land be conveyed to trustees and be by them reconveyed in case defendant paid plaintiff within twelve months; that defendant might sell any part by having the price paid to plaintiff; that after twelve and before sixteen months plaintiff might sell the remainder at auction; that a decree should be entered for the full amount claimed, and proceedings stayed until the expiration of the sixteen months, at the end of which time the trustees should convey the unsold land to plaintiff, who might sell it under the decree, in which case the agreement fixing the amount due should be void. Defendant conveyed the land to the trustees, and

then negotiated a sale to H., but defects in the title delayed the closing of the sale until after the sixteen months during which the trustees had power to convey to a purchaser, and it was necessary to convey to plaintiff in order to give H. a good title. Plaintiff, with defendant's consent, conveyed the land to H. at the agreed price. Held, that Civil Code, section 2889, which provides that "all contracts for the forfeiture of property subject to lien, in satisfaction of a lien secured thereby, and all contracts in restraint of the right of redemption from a lien, are void," had no application to such transaction.

Mortgage — Redemption by Administrator. — The Fact That Plaintiff did not formally cancel the indebtedness against such defendant did not entitle the latter's administratrix to redeem the land from the sale to H., when it appeared that such plaintiff never asserted the existence of any such indebtedness after the conveyance of the land to it by the trustees, and that it actually received such conveyance in full satisfaction.

Mortgage—Sale of Land by Brokers.—It Appeared that defendant authorized the trustees to sell the land at a price named, and "to pay commissions" out of the proceeds. They then authorized certain brokers to sell, and the latter negotiated a sale at the price named by defendant. On the title being found defective, defendant directed the trustees to decrease the price agreed on through such brokers by the amount necessary to perfect the title, which they did. Held, that the brokers were the agents, not of the trustees, but of defendant.

Mortgage.—A Finding That the Mortgagee Granted, bargained and sold the land to H. is not inconsistent with the finding of the circumstances attending the sale, which show that the conveyance was made in fulfillment of the arrangement between deceased (the mortgagor) and H., by which the mortgagee became the conduit through which the title passed.

Mortgage—Notice to Purchaser of Property.—In such case H.'s title is unaffected by any knowledge or want of knowledge by him of the contents of the deed from the trustees to his grantor, the mortgagee, or of the trust agreement.

Mortgage—Action to Redeem—Evidence.—In such action to redeem it was competent for H. to show by parol that the conveyance by the trustees to the mortgagee was made, not as a forfeiture, but to consummate a sale made by the mortgagor to a third party.

APPEAL from Superior Court, City and County of San Francisco; J. C. B. Hebbard, Judge.

Action by Mary F. Corcoran, as administratrix with the will annexed of the estate of William Corcoran deceased, against

John Hinkel and others, to redeem certain land which deceased had mortgaged to defendant German Savings and Loan Society, and which was afterward conveyed by it to defendant Hinkel. There was a judgment for defendants, and an appeal by plaintiff from such judgment was dismissed. From an order denying her motion for a new trial, plaintiff appeals. Affirmed.

John A. McKenna for appellant; Robert H. Countryman and T. V. O'Brien for respondents.

PER CURIAM.—Mary F. Corcoran, as administratrix with the will annexed of the estate of William Corcoran, deceased, brought suit against John Hinkel and a large number of other defendants, among whom were the German Savings and Loan Society, William M. Pierson, John R. Jarboe and S. H. Regensberger, the principal object of which was to be permitted to redeem certain premises therein described which Corcoran had mortgaged to said German Savings and Loan Society on July 9, 1877, to secure the sum of $95,000, then loaned to him by the mortgagee, and which was afterward conveyed by the German Savings and Loan Society (whom for convenience we will hereafter designate as the "bank") to defendant Hinkel. The other defendants not above named were purchasers, respectively, of portions of the property from defendant Hinkel.

The complaint, after alleging the making of the mortgage above mentioned, alleged in substance that in July, 1883, the bank commenced an action to foreclose said mortgage, claiming that there was then due thereunder about $100,000. Corcoran answered, claiming that by reason of a sale at much less than its value of part of block 144, which he had conveyed to the president of the bank as further security, the amount due was very much less than that demanded; that on March 31, 1886, no decree having been taken in the foreclosure suit, a compromise agreement was made and executed, whereby Corcoran admitted there was then due under said mortgage the sum of $60,000, and the bank agreed to make a further loan or advancement to Corcoran of the sum of $5,000, and would accept in full of all its claims against him the sum of $65,000, with interest from that date at six per cent, together with the

amount of taxes, street assessments, etc., which it might be
required to pay, provided the amounts thus agreed upon
should be paid within sixteen months from the date of the
agreement. This agreement, which is set out in full in the
complaint, recites the pendency of said foreclosure suits and
the contention as to the amount due, and declares that it is
the intention of the parties to adjust, compromise and settle
such differences and disputes, and to finally fix and determine
the rights, obligations and duties of the parties; and that "it
is the desire and intention of all the parties hereto that the
land and premises involved and described in said action be
sold, after the lapse of a reasonable time, for the purpose of
extinguishing all the obligations of the said William Corcoran
to said corporation, as the same are determined and fixed
by this agreement, and to save, if possible, the expenditure of
sheriff's fees upon a foreclosure sale, and to obtain as high
a price as possible for the benefit of all concerned herein."
The agreement further provided that the mortgaged property,
being a large number of parcels situate in Mission block No. 21
of the city of San Francisco should be conveyed by Corcoran
to John R. Jarboe and William M. Pierson by a deed of grant,
bargain and sale, to be held by them in trust for the uses and
purposes specified in the agreement; that at any time within
twelve months Corcoran should have the right to have con-
veyed to him all said property by the trustees upon payment
to the bank of the sums above agreed upon, with taxes, etc.,
and interest, and upon such payment to release all liens and
claims against him; that within said twelve months Corcoran
might sell any portion of the premises with the consent of the
bank, upon payment of the whole of the price received there-
for; that after the expiration of twelve months and before
the expiration of sixteen months the bank should sell the un-
sold portions at public auction for cash, or upon terms of
credit therein stated, and any surplus that should remain
should be paid to Pierson, to whom Corcoran had sold portions
of the mortgaged property prior to the agreement. The
agreement further provided that to secure the performance
of the agreement, and to enforce a sale, in case the property
could not be sold under the terms of the agreement, a decree
of foreclosure should be entered in the action then pending
for the full amount claimed in the complaint, but all proceed-

ings should be stayed until the expiration of the sixteen months from the date of the agreement. Time was made the essence of the agreement, and, in case the compromise sum was not paid within the sixteen months, the trustees should convey all of said property, or the unsold portions of it, to the bank, who might thereafter sell under its decree, and bid it in for the face of the decree and costs and in such case the agreement fixing the indebtedness of Corcoran to the bank at $65,000 should be void. It was also further provided that purchasers of the property, whether made by auction, sheriff's or other sale, should hold the same free and discharged from any claims of Corcoran, Pierson or Jarboe, by all of whom and the bank the agreement was executed.

In pursuance of the stipulation, a decree was entered in the foreclosure case April 2, 1886, for the amount claimed in the complaint. Pierson who had purchased some of the property subject to the mortgage, conveyed to Regensberger, and Regensberger joined with Corcoran in the conveyance to the trustees, and this deed was recorded August 20, 1887, and the said agreement was recorded February 7, 1888. On August 18, 1887, the trustees conveyed to the bank in pursuance of the agreement. The amount then due under the decree was $113,779.07. Said deed contained the following clause: "And the said William Corcoran and the said S. H. Regensberger have joined in this instrument in token of their acknowledgment that the matters herein recited are true"; and they signed said deed. This deed, it is alleged, was recorded August 19, 1887, and on the next day the bank conveyed to defendant Hinkel all of said property for the consideration of $80,000, and Hinkel gave the bank a mortgage on the same property for $50,000, part of the purchase price. The complaint further alleges that Hinkel took this conveyance with full knowledge of said agreement and of the Corcoran mortgage and of the foreclosure proceedings, and that the properties so conveyed to him "were for a long time prior to the commencement of this suit, and now are, worth the sum of $20,000 or thereabouts." The complaint was not verified.

All the defendants answered. The answer of the bank and Mr. Jarboe was: (1) A general denial. (2) A judgment of dismissal of a former suit brought by the plaintiff upon the same cause of action, numbered 22,804, in superior court.

(3) A judgment of nonsuit in another action, numbered 27,690, in superior court. (4) Alleged the original mortgage, foreclosure proceedings, disputes as to amount of Corcoran liability, the making of the agreement, and the conveyance to the trustees; the efforts of Corcoran to sell; that it was placed in the hands of Bovee, Toy & Co., as his agents; that they negotiated a sale to Hinkel for said sum of $80,000; that there were defects in the title which caused delays in the transaction, which carried it beyond said period of sixteen months; that the power of the trustees to convey to a purchaser under the terms of the agreement had ceased, and for that reason it became necessary to convey to the bank under the terms of the trust in order to give the purchaser a good title; that such conveyance was made for the purpose of consummating the sale thus negotiated to Hinkel, and was made with the knowledge, concurrence, and consent of Corcoran, and at his instance and request; and by the conveyance to the bank and from the bank to Hinkel the sale made by the agents, Bovee, Toy & Co., was consummated, and that Corcoran never afterward asserted or claimed that he had any interest in the property. The court found in favor of defendants, and rendered judgment against the plaintiff. An appeal was taken from the judgment, which was dismissed, and this appeal is from an order denying plaintiff's motion for a new trial.

Appellant contends that the agreement of March 31, 1886, and the trust deed to Jarboe and Pierson were intended to and did operate as a security to the bank, for the sum fixed thereby to be due to the bank under the mortgage, and the further sum of $5,000 then loaned by the bank to Corcoran; that the clause therein providing for a forfeiture in case the same should not be paid within sixteen months was void, and that the conveyance by the trustees to the bank did not convey an absolute title, nor cut off Corcoran's right to redeem. In support of this contention counsel for appellant cites section 2889 of the Civil Code, which is as follows: "All contracts for the forfeiture of property subject to a lien, in satisfaction of a lien secured thereby, and all contracts in restraint of the right of redemption from a lien are void"; and many authorities are also cited by counsel in support of that proposition. The court found all the facts stated in the fourth defense of the answer of the bank and Jarboe and Pierson to be true (except

as to the cancellation upon the books of Corcoran's debt); and these facts take the case out of the spirit and purpose of the above code provision. The code commissioners, in a note to this section say: "Of course a mortgagor may sell his property to a mortgagee, but the transaction must be a genuine sale and not a forfeiture." If we examine this contract, it will be found that its evident purpose was to afford Corcoran an opportunity to dispose of the property and pay the compromise sum within the time limited thereby. The title was vested in the trustees as clearly for that purpose as for the other purpose of conveying to the bank in case no sale should be made within the time limited; and the sale of the property was in fact made by Corcoran to the defendant Hinkel, though it was consummated by a conveyance through the bank, because of delays in perfecting the title after the terms of sale were agreed upon, which carried the transaction beyond the time limited in the agreement within which the trustees were authorized to convey to a purchaser, and which made it necessary that the title should pass through the bank. The testimony of the witnesses in this regard is conclusively corroborated by the conduct of the bank, for, under the terms of the agreement and of the trust deed, as well as of the deed from the trustees to the bank, it was no longer obliged to accept the compromise sum of $65,000, but had a right to the sum found in the decree of foreclosure amounting to $113,000, and to buy the property at that sum; but, instead of doing so, the bank carried out the sale as agreed upon between Corcoran and Hinkel, and conveyed the property to him the next day after the trustees conveyed to it, receiving $30,000 cash and taking a mortgage from Hinkel for $50,000.

It is said, however, that the bank did not cancel Corcoran's indebtedness. The court found "that no formal cancellation was proved," but that it was proved that the bank had never claimed or asserted that any indebtedness existed from Corcoran after the conveyance made to it by the trustees, and that the bank actually did receive said conveyance in full satisfaction. But it is further contended by appellant that the alleged sale by Corcoran to Hinkel was not made by Corcoran; that the trustees employed Bovee, Toy & Co., real estate brokers, to sell the property, and that they had no authority to do so. The court, however, found that Bovee, Toy & Co.

were employed by Corcoran, as alleged in the fourth defense. This finding is based upon a written authority given by Corcoran to Jarboe and Pierson to sell the property for $85,000, and to pay commissions out of the proceeds. In their efforts to sell, therefore, they were not acting under any power contained in the trust deed, but under a direct authority from Corcoran. Jarboe and Pierson, after they received this authority from Corcoran, authorized Bovee, Toy & Co. to sell. They negotiated a sale to Hinkel at the price of $85,000, conditioned upon the title being found satisfactory. Upon investigation it was found that it would require $5,000 to clear the title by buying Pattee's claim, and upon this being reported to Corcoran, on July 9, 1887, he wrote Jarboe and Pierson: "You are authorized to so modify the contract of March 23, 1887, made by you through Bovee, Toy & Co. with John Hinkel for the sale of the property therein described, as to make the purchase price $80,000, instead of $85,000, it being understood, however, that the purchaser is to take the title subject to the Pattee title and suits and the Donahue title." The authority given Jarboe and Pierson contemplated the employment of subagents, while the above writing ratified such employment, and made Bovee, Toy & Co. his agents. The finding that the conveyance was made to the bank with the agreement that the bank should convey to Hinkel in compliance with the agreement made through Bovee, Toy & Co., and with the consent and concurrence of Corcoran, is sustained by the evidence; and, in view of the foregoing, the further contention of appellant that $80,000 was not an adequate consideration for the property is without merit.

It is further insisted by appellant that certain of the findings are conflicting. The conflict alleged is between finding No. 45 and findings numbered 20 to 25, inclusive. In finding 20 it is said the bank granted, bargained and sold the property to Hinkel. This is not inconsistent with the finding of the circumstances attending it which show the conveyance to have been made in fulfillment of the arrangement between Corcoran and Hinkel which made the bank the conduit through which the title passed. Finding No. 21 is to the effect that Hinkel had only constructive knowledge of the contents of the deed from the trustees to the bank. But it is immaterial, so far as the validity of his title is concerned,

whether he had actual or constructive knowledge. Finding 22 relates to Hinkel's knowledge of the trust agreement, and to which the above is a sufficient reply. His title is unaffected by any knowledge or want of knowledge of that agreement. Finding 23 is that Hinkel purchased in good faith.. We find nothing in the findings which conflicts with that statement. As to findings 24 and 25, it is immaterial whether Hinkel relied as to title upon the fact that the bank had taken a mortgage upon the property, or whether he had only constructive knowledge of the decree of foreclosure, nor can we perceive any conflict in the findings which in any manner affects the judgment.

Appellant further insists upon a reversal because the court failed to pass upon certain objections to evidence during the trial. Defendants had put in evidence the written authority given by Corcoran to Jarboe and Pierson, dated July 29, 1887, to accept $80,000 from Hinkel because of some defect in the title; and Mr. Pierson, being examined as a witness on the part of defendants, was asked, "When was that sale consummated?" The witness replied: "It was consummated through the German Bank. I don't know the date of the transaction." Counsel for plaintiff said, "We object to that, unless there is some authority here." The court said, "Well, he has not offered it yet." The witness, continuing, testified that after the negotiations had culminated in an agreement as to price, the question of passing the title came up. An objection was made that the power of the trustees had expired by limitation, and that the proper course would be for the trustees to convey to the bank and have the bank complete the transaction. Plaintiff's counsel contended that, unless this was followed up by written authority, the testimony was irrelevant and incompetent. After discussion the court said, "I see no objection to the proof at all." The record then states that the witness was allowed to go on with the understanding that defendants supplement the parol proof with written evidence that Corcoran authorized it, and that plaintiff had the right to renew these objections at any time during the trial. Other parts of the record show that it was not claimed that Corcoran in writing assented to this mode of transfer, unless such assent could be inferred from the fact that he joined in the deed to the bank in token that the recitals therein contained were true, while

nothing is found intimating that defendants intended to supplement this evidence by written evidence; nor does the record show that the objections were renewed. In appellant's brief it is said that the point was argued in the court below in the briefs filed, but that is not in the record. The objection raised by counsel was clearly ruled upon by the court, when it said, "I see no objection to the proof at all"; and no exception was taken. Besides, the evidence was clearly competent, and the plaintiff would not have been benefited by an exception. Without citing authorities, it may be briefly said that in this state it is well settled that a deed absolute upon its face may be shown by parol evidence to be a mortgage, and, that being true, no reason can be conjectured why such evidence may not be rebutted by parol. It was clearly competent to show by parol that the conveyance was made to the bank, not as a forfeiture to it, but to consummate a sale made by Corcoran to a third party. We find no ground for a reversal. The order appealed from is affirmed.